Plaintiff strained muscles in her arm tightening a vise under "accidental" (unusual in her job) circumstances on January 1, 1993, but continued to work until May 24, 1993, when she began resting the arm on medical advice. She returned to work June 8 through 21, but developed "post-traumatic fibrositis with bilateral epicondylitis, which is sort of a tennis elbow type thing." (Depo. of Dr. McCain, p. 16.) This condition had begun developing in March, 1993. These problems caused the plaintiff some situational depression — a normal and natural reaction to the aggravation of pain and a limiting physical condition. (Depo. of Dr McCain, p. 31.) By February 9, 1994, she had developed polymyalgia rheumatica, unrelated to the January 1, 1993 trauma and fibromyalgia. "They're both [conditions of the] muscles and joints, but their causation is different". (Depo. of Dr. McCain, pps. 29-30.) According to the medical evidence, this new condition forced plaintiff out of work, and eventually the depression associated with it became clinically debilitating as well. (Depo. of Dr. McCain, pps. 29-31; Depo. of Dr. Brink, pps. 18 and 25-27.) There is no convincing evidence that, but for the workplace injury and the situational "depression" that it caused, that the subsequent, non-work related polymyalgia rheumatica would not have been disabling to the same extent. When analyzing the evidence in a case of this nature, the Commission must rely on expert medical testimony. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). Consequently, the disability attributable to those conditions are not compensable. Wilkins v. J.P. Stevens Co.,333 N.C. 449, 454, 426 S.E.2d, 675 (1993); Morrison v. BurlingtonIndustries, 304 N.C. 1, 18, 282 S.E.2d 458 (1981).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, with minor modifications the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as
STIPULATIONS
1. The day of the alleged accident was January 1, 1993.
2. The employee-employer relationship existed at the time of the alleged injury.
3. The employer was insured by and Continental Loss Adjustment was the compensation administrator.
4. The employee's average weekly wage was $266.66, based upon an hourly rate of $6.67, and a daily rate of $53.36.
5. The parties agree to stipulate the following [health care providers'] medical records: Dr. McDaniel, Dr. Epner, Dr. Reasch, Dr. Andrew, Dr. Bellamy, Dr. McCain and Dr. Barry Brink.
* * * * * * * *
Based upon the competent evidence adduced at the hearing, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a right-handed, 46 year-old married female with a high school education. In November of 1986 she initially became employed by defendant Brandt Instruments and when injured was a machine operator in the premises machine shop responsible for loading parts into her assigned machine to be drilled out according to an automated program by placing the same parts in a vise and tightening down the vise to hold them in place during the drilling out process. Ordinarily, not a lot of force was required to tighten down the machines' vise.
2. On January 1, 1993, in the process of tightening down the vise on a new part in order to insure it was securely held in place to prevent further breakage of the limited number of drill bits available, plaintiff experienced an interruption of her normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences when she was required to pull back on the vise with both hands with all her weight resulting in a compensable injury to her dominant right upper extremity, giving rise to pain extending from the fingers to the elbow. After plaintiff's compensable injury, she returned to work in January of 1993. Except for two relatively brief periods of time when she was out of work in the spring and summer of 1993, she continued to work until February of 1994.
3. Plaintiff was initially seen by her family physician, Dr. William Bellamy, whose treatment primarily consisted of anti-inflammatories. Because of her persistent pain, Dr. Bellamy subsequently referred plaintiff to an orthopaedic surgeon, Dr. Jason McDaniel of the Raleigh Orthopaedic Clinic, who provided a conservative course of treatment, including medication and physical therapy.
4. Despite her January 1, 1993 injury, plaintiff was able to continue working regularly for defendant-employer until May 24, 1993, when Dr. McDaniel took her out of work for two weeks to allow her right arm to rest. On June 8, 1993, plaintiff was able to return to alternative lighter work for defendant-employer and to continue working regularly until her injury again became totally incapacitating on June 21, 1993, resulting in her being out of work for approximately a month before again returning to light duty work for defendant-employer on July 22, 1993. During the two periods she was out of work in May, June, and July, plaintiff received workers' compensation benefits from defendant-carrier, which were paid without the benefit of an approved I.C. Form 21 or 26 agreement or other formal Industrial Commission award. However, it appears that the plaintiff was not prejudiced, because benefits were terminated when she returned to work, and her treating physician did not relate the subsequent period of disability to the accident.
5. As a direct and natural result of the January 1, 1993 injury to her dominant right upper extremity, plaintiff developed traumatic fibrositis manifested by right arm, shoulder, and neck pain requiring her to come under the care of a Wilson rheumatologist, Dr. John McCain, who initially saw her on September 28, 1993, and who provided a conservative course of treatment, primarily consisting of various medications.
6. With the same treatment, plaintiff's condition stabilized; and by December 30, 1993, when last seen by Dr. McCain that year, she had reached maximum medical improvement and/or the end of the healing period from and following her January 1, 1993 injury, at which time she retained a five (5) percent permanent-partial disability of the affected dominant right upper extremity as a result of the same injury. There is no evidence that her permanent impairment reduced plaintiff's actual capacity to earn wages.
7. When plaintiff saw Dr. McCain again on February 9, 1994, she complained of pain on both sides of her body, indicating a more generalized body illness. Plaintiff's SED (sedimentation) rate had increased from 15 to 98 in less than two months. Dr. McCain opined that the rise in the SED rate indicated plaintiff had some sort of inflammatory type of arthritis, lupus, infection, or cat scratch fever. Dr. McCain opined that the trauma injury of January 1993 — the cause of plaintiff's fibrositis — was separate and distinct from the inflammatory response, polymyalgia rheumatica, which caused her problems after December of 1993.
8. Although because of the permanent injury to her dominant right upper extremity, plaintiff was no longer able to return to her regular machine operator's job, plaintiff not only remained capable of light duty work within the physical limitations of her permanent arm injury; but in July of 1993, plaintiff again returned to work for defendant-employer in a light duty capacity, and was able to continue working regularly until developing disabling polymyalgia rheumatica in February, 1994, manifested by symmetrical generalized joint and muscle aches as well as an elevated SED (sedimentation) rate. The polymyalgia rheumatica that has been totally incapacitating plaintiff since February of 1994 is an entirely separate and distinct illness or condition unrelated to the traumatic injury sustained on January 1, 1993 to plaintiff's dominant right upper extremity, and one that involves an abnormality in her defense or immune system, which was not triggered by the traumatic injury she sustained tightening the vise.
9. Because of the physical, occupational, and financial losses suffered as a result of the disabling polymyalgia rheumatica that plaintiff developed in February, 1994, plaintiff has become depressed, requiring that she seek treatment for her resulting "adjustment disorder" and depression — treatment which she did not require prior to developing polymyalgia rheumatica, despite her permanent arm injury. Before developing polymyalgia rheumatica, plaintiff had been able to compensate for her permanent-partial disability and to continue working regularly, performing light duty work at wages comparable to her pre-injury wages, until disabled by the unrelated polymyalgia rheumatica she subsequently developed.
* * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. On January 1, 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment, and as a result thereof was temporarily totally disabled from May 25, 1993 to June 8, 1993, and from June 22, 1993 to July 21, 1993; but has already been compensated by defendant-carrier with payments for these same periods without the benefit of a formal Industrial Commission award, which are credited against compensation due, in the Commission's discretion. Plaintiff is entitled to medical compensation. N.C. Gen. Stat. §§ 97-2(6);97-29; 97-82(1993); 97-2(19); 97-25.
2. As a direct and natural result of the injury by accident of January 1, 1993, plaintiff also developed traumatic fibrositis, requiring that she receive treatment from a rheumatologist. With that treatment, plaintiff's condition subsequently stabilized, and by December 30, 1993 she had reached maximum medical improvement and/or the end of the healing period from and following her January 1, 1993 arm injury, with a five (5) percent permanent partial disability of the same extremity, entitling her to 12 weeks of compensation at a rate of $177.78 per week, commencing as of December 30, 1993. N.C. Gen. Stat. § 97-31(13).
3. Although because of her permanent arm injury, plaintiff was unable to return to her regular machine operator's job for defendant-employer, she remained capable of light duty work within the physical limitations of her permanent partial disability, and returned to light duty work for defendant-employer on July 21, 1993, and she was able to continue working regularly until developing polymyalgia rheumatica in February of 1994. Plaintiff's polymyalgia rheumatica is wholly unrelated to her January 1, 1993 arm injury, and developed independent of it. Due to her polymyalgia rheumatica and resulting loss of function, plaintiff has also become depressed, requiring medical treatment. She did not require medical treatment for depression, or experience disabling depression prior to developing the polymyalgia rheumatica, and the injury by accident of January 1, 1993 and resulting conditions did not cause or contribute to the development of disabling depression.
* * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff, on account of her five (5) percent permanent-partial disability of the dominant right upper extremity, 12 weeks of compensation at a rate of $177.78 per week commencing December 30, 1993, the occasion of her having reached maximum medical improvement and/or the end of the healing period from and following the same injury. Such compensation having accrued, the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney's fee as hereinafter approved.
2. A reasonable attorney's fee in the amount of twenty-five (25) percent of the compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the above award and forwarded directly to him.
3. To the extent the same is reasonably designed to effect a cure of, provide needed relief from, and/or lessen the period of disability associated therewith, defendants are obligated to pay all reasonable and necessary medical compensation expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission Rules; however, defendants are not obligated to pay the medical treatment that plaintiff has incurred for her disabling polymyalgia rheumatica and resulting depression because these conditions are unrelated to her January 1, 1993 right arm injury.
4. Defendants shall pay the costs due this Commission, including as part thereof the $225.00 and $150.00 expert witness fees, previously respectively awarded Dr. John L. McCain and the psychologist involved, Dr. Barry R. Brink, each of whom appeared by way of deposition and gave expert medical testimony.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER
JRW:md 3/24/97